UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE,

    Plaintiff,

v.                                       Case No. 1:14-cv-33
                                        Hon. Robert J. Jonker

MICHAEL MORAN, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a former state prisoner.[1] This matter is now before the Court on motions for summary judgment filed by defendants Michael Moran and Mark Raymer (docket no. 11) and defendant Stephan Jozlin, P.A. (docket no. 15).

### I.    Plaintiff's complaint

Plaintiff's complaint involves incidents which occurred while he was incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). Plaintiff's complaint is directed at four defendants: P.A. Stephan Jozlin; Psychologist Michael Moran; Corrections Officer (CO) Mark Raymer; and CO Crystal Murry. This matter is stayed as to CO Murry due to her bankruptcy. *See* Order (docket no. 33). The remaining three defendants have moved for summary judgment for lack of exhaustion and on the merits.

### A.    Defendants Jozlin and Moran

---

[1] On December 11, 2014, plaintiff notified that Court that he was no longer incarcerated and currently resides in Battle Creek, Michigan. *See* Change of Address (docket no. 35).

Plaintiff sets forth the following allegations against defendants P.A. Jozlin and Mr. Moran. On October 12, 2012 following a transfer to ICF, P.A. Jozlin interviewed plaintiff regarding his prescribed medications. Compl. at ¶¶ 12-14 (docket no. 1). Several weeks later, on November 28, 2012, Jozlin approached plaintiff's cell about a grievance that plaintiff previously filed against Jozlin. *Id.* at ¶ 16. Plaintiff fails to identify the substance of the discussion or the outcome of their interaction. *Id.* Plaintiff claims that at the same time, defendant Moran approached and threatened plaintiff to sign off on the grievance, but plaintiff refused. *Id.* As a result, Jozlin allegedly conspired with Moran to order that plaintiff's psychotropic medication "be crushed and liquidated" on that date, making plaintiff's medication "extremely unpleasant and distasteful." *Id.* at ¶ 17. According to plaintiff, "[p]risoners' medication are only crushed and liquidated who [sic] abuse or are suspected of abusing their medication." *Id.* Plaintiff claims that he neither abused his medication nor was suspected of abusing it. *Id.* Rather, Jozlin and Moran conspired to make his medication unpleasant "to curb [p]laintiff from continuing to pursue or filing future grievances." *Id.*

According to plaintiff, this medication change caused him to suffer severe stomach pain and vomiting. *Id.* at ¶ 18. Because of these side effects "[p]laintiff was forced to refuse his prescribed medications which caused the exacerbation of his mental illness, namely his suicidal ideations, for nearly a two-week period." *Id.* at ¶ 19. Plaintiff also claims that a change in medication (i.e., sudden absence Thorazine and drastic decrease of Remeron) caused him to experience long term sleep deprivation which led to physical pain and severe headaches for a six-month period from October 12, 2012 to April 12, 2013. *Id.* at ¶ 20.

Plaintiff also alleged that P.A. Jozlin did not conduct a mandatory 30-day medication review after his initial medication review on October 12, 2012. *Id.* at ¶ 22. According to plaintiff,

Jozlin did not conduct a medication review until April 12, 2013 due to plaintiff's complaints and grievances. *Id.* Furthermore, Jozlin was not qualified to conduct comprehensive psychiatric evaluations or to prescribe medication because he was only a physician assistant. *Id.* at ¶ 24.

### B.     Defendant Raymer

On December 14, 2012, when plaintiff was exiting the chow hall as instructed by staff, CO Raymer told plaintiff "I heard you was over here because you like to file grievances" and "by the time we're finished with you, you'll never write another grievance again." *Id.* at ¶ 27.

During the afternoon of December 17, 2014, non-party CO Toogood wrote plaintiff a minor misconduct for contraband (i.e., possessing 62 pages of sexually explicit material). *Id.* at ¶ 29. Plaintiff claims that this misconduct was issued in retaliation for filing grievances rather than for a violation of any rule. *Id.* When plaintiff returned to his cell from the yard, he found it in shambles, with linen on the floor, his mattress flipped over, his legal mail tossed around that cell, and family photos in the toilet. *Id.* at ¶ 28. That same day, CO Raymer reviewed the misconduct with plaintiff and tried to intimidate plaintiff into pleading guilty. *Id.* at ¶ 29. Plaintiff refused and CO Raymer told plaintiff "that he would receive falsified misconduct reports to ensure that he would remain on sanctions." *Id.*

CO Murry conducted the hearing on the misconduct. *Id.* at ¶¶ 30-32. Plaintiff contends that Murry mistreated him by not allowing plaintiff to sit in a "good chair" and telling him that he had to sit in "the f***** up one." *Id.* at ¶ 30. In addition, CO Murry attacked plaintiff by yanking a heavy steel chair from the side of the desk, hitting plaintiff in the right knee and causing him to suffer "excruciating pain." *Id.* After telling plaintiff that he had "an attitude problem" and that he would not stop filing grievances, Murry found plaintiff guilty of the misconduct and

3

sentenced him to the maximum sentence of 15 days of loss of privileges (LOP) "without allowing [p]laintiff to offer any form of defense." *Id.* at ¶ 32. Later that same day, CO Toogood reviewed a second minor misconduct with plaintiff written by CO Raymer. *Id.* at ¶ 33. Plaintiff contends that Raymer's misconduct allegation was falsified, explaining as follows:

> In the body of the misconduct Defendant RAYMER reported that at 6:15 p.m. Plaintiff "came out of his cell and passed an item under cell 36." However, Plaintiff could not have passed an item under any cell door at 6:15 p.m. because Plaintiff was inside of the Counselor's Office located on B-Wing at 6:10 p.m.

*Id.* at ¶ 36. Nevertheless, CO Murry found plaintiff guilty of the second offense, telling plaintiff "you don't get no defense" and sentenced him to 15 days of LOP. *Id.* at ¶ 33.

On December 17, 2012, CO Raymer came over the loud-speaker and stated "hey Berkshire, are you done with the grievances?" *Id.* at ¶ 37. After plaintiff ignored this comment, Raymer "began screaming angrily over the loud-speaker referring to [p]laintiff as a 'snitch', with the intention to incite other prisoners to inflict great bodily harm upon him." *Id.*

Plaintiff appealed the misconduct convictions on December 18, 2012. *Id.* at ¶ 35. That same day, plaintiff alleged that in the morning he saw a piece of paper outside his cell door in which a prisoner by the alias of "Dough Boy" threatened to "take all yo shit and kill you" unless plaintiff paid $80.00. *Id.* at ¶ 38. Plaintiff ultimately paid the money. *Id.* In addition, when plaintiff returned from the law library that day, he found his cell in shambles. *Id.* at ¶ 39. Plaintiff continues:

> On Plaintiff's bed was two Declarations attested to under the penalty of perjury signed by other prisoners. After dinner Defendant RAYMER came over the loud-speaker and announced to the entire unit "for future references, anyone siding with prisoner Berkshire will get the same treatment he's getting." As a result, after the 18th of December, witnesses have been reluctant to come forward on Plaintiff's behalf.

*Id.*

4

In April 2013, non-party Deputy Warden Norwood found that plaintiff's due process rights were violated and ordered a re-hearing on both misconducts. *Id.* at ¶ 35. On May 23, 2013, non-party Sergeant Zwolensky called plaintiff out regarding the re-hearings, but did not conduct the re-hearings because plaintiff had served his sanctions. *Id.* at ¶ 35. Plaintiff was transferred from ICF on June 28, 2013. *Id.* at ¶ 40.

### C. Plaintiff's claims

Plaintiff claims that defendants Jozlin, Moran, Raymer and Murry violated his rights under 42 U.S.C § 1983. Plaintiff claims that defendants Jozlin, Moran and Raymer retaliated against him in violation of his First Amendment rights. *Id.* at ¶¶ 43 and 47. Plaintiff also claims that defendants Jozlin and Raymer violated his Eighth Amendment rights. *Id* at ¶ 47.[2] Plaintiff also claims that these three defendants engaged in a conspiracy to deprive him of his civil rights contrary to 42 U.S.C. § 1985(3). *Id.* at ¶¶ 44 and 50. Finally, plaintiff seeks relief under state tort law against defendant Jozlin for negligence and medical malpractice. *Id.* at ¶ 45.[3] Plaintiff seeks compensatory damages, punitive damages, and equitable relief to ensure that physician assistants at ICF are "properly supervised." *Id.* at ¶ 50.

### II. Legal standard

Defendants Jozlin, Moran and Raymer seek summary judgment on plaintiff's claims. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[2] While plaintiff claims that all defendants violated his Eighth Amendment rights, his specific allegations against defendant Moran are limited to retaliation. *Id.* at ¶¶ 16-17, 47. Accordingly, the Court does not construe plaintiff's complaint as including an Eighth Amendment claim against Moran.

[3] Plaintiff also alleged due process violations related to the hearings conducted by CO Murry. Compl. at ¶¶ 30-35, 43. However, it is unnecessary to address the alleged due process violations because this matter is stayed as to Murry.

5

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Finally, while plaintiff opposed defendant Moran and Raymer's motion for summary judgment, he did not oppose Jozlin's motion. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### III.   Exhaustion of administrative remedies

### A.   Legal standard

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

>has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

>The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

8

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Plaintiff's grievances

In support of their motions for summary judgment, defendants set forth a list of the 25 grievances which plaintiff exhausted through Step III while he was incarcerated at ICF. *See* Moran and Raymer Brief (docket no. 12 at pp. ID## 98-104); MDOC Grievance Report and Grievances (docket no. 12-3 at pp. ID## 123-266). Based on that information, the Court has found 6 grievances directed at defendants Jozlin, Moran and Raymer which appear to be related to alleged claims in plaintiff's complaint.

### 1. Grievances directed at P.A. Jozlin

#### a. ICF-13-03-599-12f1 ("599")

This grievance was directed at P.A. Jozlin for an incident that occurred on February 28, 2013. *See* Grievance No. 599 (docket no. 12-3 at p. ID# 158). In this grievance, plaintiff complained that Jozlin drastically reduced his Rameron prescription (a sleeping aid) from 30 mg to 7.5mg, a dosage too low to have an effect on him. *Id.* In addition, Jozlin stopped plaintiff's anti-psychotic medication Thorazine and stated that he would replace it with a similar medication with less side effects. *Id.* However, Jozlin deliberately deferred prescribing the substitute medication. *Id.* In addition, Jozlin refused to conduct any medication reviews in retaliation for plaintiff's past grievances and complaints. *Id.*

Plaintiff's grievance is consistent with the allegations in his complaint. First, that the change in medication (i.e., sudden absence Thorazine and drastic decrease of Remeron) caused plaintiff to experience long term sleep deprivation which led to physical pain and severe headaches

9

from October 12, 2012 to April 12, 2013. Compl. at ¶ 20. Second, that due to his complaints and grievances, Jozlin did not conduct a mandatory 30-day medication review after the initial review on October 12, 2012, until April 12, 2013. *Id.* at ¶ 22.

The grievance was denied at Steps I and II as unsupported by the evidence. Grievance No. 599 at pp. ID## 155-59. The MDOC rejected the grievance at Step III on a procedural ground because there was no indication that plaintiff attempted to resolve the grievance prior to filing it. *Id.* Based on this record, plaintiff failed to properly exhaust this grievance. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, P.A. Jozlin's motion for summary judgment should be granted on this claim due to lack of proper exhaustion.

        **b.**     **ICF-13-03-600-12b3 ("600")**

This grievance was directed at P.A. Jozlin for an incident that occurred on February 28, 2013. *See* Grievance No. 600 (docket no. 12-3 at pp. ID## 150-54). In this grievance, plaintiff complained that the MDOC does not have an on-site psychiatrist, that Jozlin is only a physician assistant, that Jozlin is not being properly supervised, and that Jozlin is providing incompetent patient care in violation of plaintiff's constitutional rights. *Id.* Plaintiff's grievance is consistent with the allegation in his complaint that P.A. Jozlin was not qualified to conduct comprehensive psychiatric evaluations or to prescribe medication. Compl. at ¶ 24.

The grievance was denied at Steps I and II as unsupported by the evidence. Grievance No. 600 at pp. ID## 150-54. The MDOC rejected the grievance at Step III on a procedural ground because there was no indication that plaintiff attempted to resolve the grievance prior to filing it. *Id.* Based on this record, plaintiff failed to properly exhaust this grievance. *See Jones,* 549 U.S. at

10

218; *Woodford*, 548 U.S. at 90-91.  Accordingly,  P.A. Jozlin's motion for summary judgment should be granted on this claim due to lack of proper exhaustion.

### 2. Grievances directed at CO Raymer

#### a. Plaintiff's concessions regarding CO Raymer

In his response to CO Raymer's motion for summary judgment, plaintiff conceded that some of the alleged actions by Raymer did not constitute a violation of his constitutional rights, specifically verbal harassing, harassing cell searches, minor misconducts, LOP's, and a brief deprivation of his property. *See* Plaintiff's Response (docket no. 17 at p. ID# 326).  By making these concessions, plaintiff limited his claims against CO Raymer to two instances of retaliation.  First, that on December 14, 2012, Raymer threatened plaintiff with segregation for filing grievances.  *Id.* at pp. ID## 326-27; Compl. at ¶ 27.  Second, that on December 17, 2012, in retaliation for plaintiff filing grievances, Raymer went on the loud speaker and referred to plaintiff as a snitch in an attempt to incite other prisoners to assault him.  Plaintiff's Response at pp. ID## 326-29; Compl. at ¶ 37.  Accordingly, the Court will review plaintiff's grievances as they relate to these two claims.

#### b. CO Raymer's alleged threat to place plaintiff in segregation

Plaintiff alleged that on December 14, 2012, CO Raymer retaliated against him by threatening to place plaintiff in segregation for filing grievances.  Compl. at ¶ 27; Plaintiff's Response at pp. ID## 326-27.  There is no evidence that plaintiff filed a grievance related to this incident.  *See* Grievances (docket nos. 12-3, 12-4, and 12-5 at pp. ID## 123-266).  Plaintiff failed to properly exhaust this issue.  *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.

11

Accordingly, CO Raymer's motion for summary judgment should be granted on this claim due to lack of proper exhaustion.[4]

### c. ICF-13-01-0091-28i ("91")

In this grievance, plaintiff claimed that on December 17, 2012, CO Raymer stated on the intercom "Hey Berkshire, are you done with the grievances?" *See* Grievance No. 91 (docket no. 12-4 at p. ID# 189). When plaintiff did not respond, Raymer screamed into the microphone that plaintiff was a "snitch", which incited other prisoners to "verbally abuse" plaintiff and to jeopardize his health and safety. *Id.* Plaintiff claimed that Raymer's action was in retaliation for plaintiff's constitutionally protected right to file grievances. *Id.* This grievance was rejected because plaintiff did not attempt to resolve the issue prior to submitting a written grievance. Grievance No. 91 at p. ID# 190. The rejection was upheld at Steps II and III. *Id.* at pp. ID## 186, 188. Based on this record, plaintiff failed to properly exhaust this grievance. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, CO Raymer's motion for summary judgment should be granted on this claim due to lack of proper exhaustion.

### 3. Grievance directed at Mr. Moran (ICF-12-12-3981-12z4 ("3981"))

---

[4] The Court notes that the only grievance referring to an incident occurring on December 14, 2012 is ICF-13-01-0088-28i ("88"). *See* Grievance No. 88 (docket no. 12-4 at p. ID# 227). In this grievance, plaintiff did not allege any particular conduct against Raymer, other than to state that "Raymer's words intimidated plaintiff because he has an extensive history of these types of retaliation." *Id.* The grievance was rejected at Step I because plaintiff failed to attempt to resolve the issue with staff prior to submitting a written grievance. *Id.* at p. ID# 228. The rejection was upheld at Steps II and III. *Id.* at pp. ID## 224, 226. Plaintiff concedes that this grievance was not properly exhausted. *See* Response Brief (docket no. 17 at p. ID# 335) ("Plaintiff will concede that he has failed to properly exhaust, as it appears from the grievance itself that Plaintiff did not attempt to resolve the issue with appropriate staff").

This grievance refers to an incident which occurred on November 28, 2012, when Mr. Moran allegedly threatened to retaliate against plaintiff if he did not sign off on a grievance. *See* Grievance No. 3981 (docket no. 12-5 at p. ID# 252). When plaintiff refused, his psychotropic medications changed to liquid form. *Id.* Mr. Moran concedes that this grievance was properly exhausted. *See* Moran and Raymer Brief (docket no. 12 at p. ID# 103).

    **4.    Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3)**

Plaintiff alleged that defendants engaged in a conspiracy to deprive plaintiff of his civil rights contrary to 42 U.S.C. § 1985(3). *See* Compl. at ¶ 50. However, there is no evidence that plaintiff filed a grievance related to this alleged conspiracy. *See* Grievances (docket nos. 12-3, 12-4, and 12-5 at pp. ID## 123-266). Based on this record, plaintiff failed to properly exhaust this issue. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants' motions for summary judgment should be granted on this claim due to lack of proper exhaustion.

    **IV.    Plaintiff's First Amendment retaliation claim against Mr. Moran**

Plaintiff seeks relief against Mr. Moran pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

13

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Plaintiff cannot establish the third element of a retaliation claim. In order to establish this element, plaintiff must show that Mr. Moran had the ability and authority to take the adverse action against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). "Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision maker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Here, Mr. Moran was not a "decision maker" authorized to increase, decrease or prescribe plaintiff's medications. Moran is a "Masters Level Psychologist" who "cannot order, prescribe, prepare or deliver medications." Moran Aff. at ¶ 7 (docket no. 12-7). Because Mr. Moran was not a decision maker authorized to change plaintiff's medication, plaintiff cannot establish a causal connection between Moran's alleged malice toward him and the decision to change the form of his medication. *See Echlin v. Boland,* 111 Fed. Appx. 415, 417 (6th Cir. 2004) ("[t]he motivations of non-decision makers cannot establish a causal connection in a retaliation case"). Accordingly, defendant Moran is entitled to summary judgment on plaintiff's retaliation claim.

      **V.**     **Plaintiff's state law claims**

Finally, plaintiff's complaint alleged that defendant Jozlin committed various state law torts. The court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant

to 28 U.S.C. § 1367, because those claims appeared to be intimately related to the alleged § 1983 violation. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the Court should dismiss plaintiff's state law claims asserted against all defendants.

### VI.     Recommendation

For the reasons set forth above, I respectfully recommend that Michael Moran and Mark Raymer's motion for summary judgment (docket no. 11) be **GRANTED** and that they be **DISMISSED** from this action.

I further recommend that Stephan Jozlin's motion for summary judgment (docket no. 15) be **GRANTED**, that plaintiff's state law claims against Jozlin be **DISMISSED** pursuant to 28 U.S.C. § 1367, and that Jozlin be **DISMISSED** from this action.

I further recommend that this action be **ADMINISTRATIVELY CLOSED** pending the resolution of defendant Murry's bankruptcy.


Dated: March 20, 2015                              /s/ Hugh W. Brenneman, Jr.
                                                                     Hugh W. Brenneman, Jr.
                                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).